```
   ;  \DC SDNY
   ;  DOCUMENT
   ;  ELECTRONICALLY FILED
   ;  DOC #: _____
   ;  DATE FILED: 9/6/13
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

— against —

VLADIMIR DELACRUZ, et al.,

Defendants.

09 Cr. 341 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Defendant Vladimir Delacruz ("Delacruz") filed a motion pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A) seeking dismissal of indictment in this case. (Dkt. Nos. 166, 167 & 168.) The Government filed its opposition (Dkt. No. 170), and Delacruz filed a reply (Dkt. No. 174).

Having reviewed the parties' submissions, the Court **DENIES** Delacruz's motion for the reasons stated below.

### I. BACKGROUND

Delacruz is one of three defendants listed in Indictment S4 09 Cr. 341 (the "S4 Indictment"), which contains multiple counts charging defendants with using interstate commerce facilities in the commission of murder-for-hire, in violation of 18 U.S.C. § 1958, and using a firearm in the commission of a killing, in violation of 18

U.S.C. § 924(j).[1] The other two named defendants are Jose Peña and Hector Raymond Peña. Counts One, Two, and Three relate to the murder of Pedro Medina, while Counts Four through Eight relate to the murders of Jose Suarez ("Suarez") and Juan Carmona ("Carmona").

Delacruz is listed in Counts Five and Six in the Indictment. Count Five charges all three defendants with violating 18 U.S.C. §§ 1958 and 2 in connection with the killing of Suarez, and Count Six charges all three defendants with violating the same provisions in connection with the killing of Carmona. Unlike the other two defendants, Delacruz is specifically charged as aiding and abetting in Counts Five and Six.

Suarez and Carmona were each killed on or about June 25, 1997.[2] Six defendants -- including both Jose Peña and Hector Raymond Peña, but not Delacruz -- were first indicted in this matter on April 7, 2009. (See Dkt. No. 1.) Delacruz was not indicted as a defendant until the Government filed the S4 Indictment on April 15, 2013. In his motion to dismiss, Delacruz argues that this gap of

---

[1] In conjunction with several of these charges, the indictment also lists violations of 18 U.S.C. § 2, which provides that anyone aiding or abetting these acts is punishable as a principal.

[2] For the purposes of this motion to dismiss, the Court accepts all factual allegations in the indictment as true. See United States v. Clarke, No. 05 Cr. 17, 2006 WL 3615111, at *1 (S.D.N.Y. Dec. 7, 2006).

nearly sixteen years between the events underlying his indictment and the filing of the S4 Indictment requires dismissal of the charges against him because he has been denied his constitutional right to due process. (See Dkt. No. 170.)

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(3)(A) requires that any "motion alleging a defect in instituting the prosecution" must be raised before trial. The Supreme Court has "recognized that an excessive preindictment delay may in some cases deny a criminal defendant his fifth amendment right to due process of law." United States v. Long, 697 F. Supp. 651, 656 (S.D.N.Y. 1988); see United States v. Lovasco, 431 U.S. 783, 789 (1977); United States v. Marion, 404 U.S. 307, 324 (1971). Although the "applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges," Marion, 404 U.S. at 322 (quoting United States v. Ewell, 386 U.S. 116, 122 (1966), a defendant's due process rights are violated regardless of any applicable statute of limitations where the delay "has been shown to cause 'substantial prejudice' to the defendant's ability to present his defense and 'the delay was an intentional device to gain [a] tactical advantage over the accused.'"

United States v. Cornielle, 171 F.3d 748, 752 (2d Cir. 1999) (quoting Marion, 404 U.S. at 324); see also Long, 697 F. Supp. at 657 n.3 (rejecting defendant's argument that negligence by the Government is sufficient to establish a violation and noting that "[t]he law in this circuit is clear that <u>both</u> actual prejudice and unjustifiable government conduct so as to gain a tactical advantage is required to support a fifth amendment challenge to preindictment delay.").[3]

### III. DISCUSSION

Delacruz argues that the pre-indictment delay has substantially prejudiced him in this case for two primary reasons: first, because Jose Acosta ("Acosta," a/k/a "Chino"), a "key witness," died before the S4 Indictment was filed; and second, because the Government "now brings forward witnesses . . . [who] have much motivation for cooperating with the Government at this time" and who "have had many years to concoct a story to help their

---

[3] Under the Government's theory of the case, there is no applicable statute of limitations because the alleged offenses are punishable by death. See 18 U.S.C. § 3281 ("An indictment for any offense punishable by death may be found at any time without limitation."). Thus, Delacruz cannot raise a claim based on "potential prejudice" because "the applicable statute of limitations is the primary guarantee against . . . overly stale charges" in those instances. United States v. Ma, No. 03 Cr. 734, 2006 WL 708559, at *8 (S.D.N.Y. Mar. 21, 2006). Where, as here, there is no applicable statute of limitations to define the outer boundary, a claim must rest on due process grounds and must therefore demonstrate both substantial prejudice and intentional delay.

circumstances." (Dkt. No. 167 at 36.) Neither supports a finding of substantial prejudice in this case, and Delacruz has likewise failed to demonstrate that the Government illicitly sought a tactical advantage in causing the preindictment delay.[4]

A. <u>DELACRUZ HAS NOT DEMONSTRATED SUBSTANTIAL PREJUDICE</u>

While it is true that substantial prejudice "is commonly demonstrated by the loss of documentary evidence or the unavailability of a key witness," <u>Cornielle</u>, 171 F.3d at 752, the fact that Acosta cannot testify because of his death does not necessarily compel such a finding. "Faded memories or unavailable witnesses are inherent in any delay, even if justifiable. To merit dismissal a defendant must demonstrate a substantial, actual prejudice to his ability to defend himself." <u>Long</u>, 697 F. Supp. at 657.

---

[4] To the extent that Delacruz's motion seeks to challenge the Government's theory as it applies to the facts in this case -- <u>i.e.</u>, whether he can be prosecuted under an "aiding and abetting" theory (<u>see</u> Dkt. No. 167 at 16 n.10 (calling this "a particularly odd capital offense"); Dkt. No. 174 at 8 (opining that the Government's theory is "ill-founded and bizarre") -- that issue is improper here. See <u>United States v. Thomas</u>, 492 F. Supp. 2d 405, 412-13 (S.D.N.Y. 2007) ("A court should not look beyond the face of the indictment and draw inferences as to proof to be adduced at trial, for 'the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.'") (quoting <u>United States v. Alfonso</u>, 143 F.3d 772, 776-77 (2d Cir. 998)); <u>see also</u> <u>United States v. D'Amico</u>, 734 F. Supp. 2d 321, 353 (S.D.N.Y. 2010) ("'A Rule 12 motion to dismiss is not the proper way to raise a factual defense.'") (quoting 24 <u>Moore's Federal Practice</u> § 612.02).

Delacruz has not made such a demonstration. To begin, it does not appear that any prejudice stemming from Acosta's unavailability was a result of the near-sixteen-year pre-indictment delay. The Government states in its memorandum that Acosta was murdered on July 19, 1998, roughly one year after Carmona and Suarez were killed. (See Dkt. No. 170 at 5.) Delacruz's counsel indicates that he was unaware of this date and that he "believed that it happened considerably later," but does not appear to dispute the Government's assertion. (Dkt. No. 174 at 11.) Instead, he argues that "[i]t is unclear how when [Acosta] was murdered was relevant." (Id.) In fact, the timing is directly relevant to the inquiry of whether the "excessive" preindictment delay "caused" any resulting prejudice from Acosta's absence. Because Acosta was murdered so close in time to the crimes alleged against Delacruz in the S4 Indictment, he was unavailable long before the delay could reasonably be considered "excessive." The early date of Acosta's death effectively severs the causal link between the sixteen-year preindictment delay and his unavailability as a witness.

Moreover, Delacruz is light on details that support Acosta's label as a "key witness," offering only a handful of facts that he avers Acosta "knows." The Court is not

persuaded by Delacruz's contentions that the benefits he would derive from Acosta's presence (were he still alive) rise above the level of mere speculation. See Long, 607 F. Supp. at 657 (finding that "perceived prejudice is speculative" where there was "no way of knowing what [the unavailable witness's] testimony would have been"); see also United States v. Lawson, 683 F.2d 688, 694 (1982) (finding that defendant did not identify a substantial prejudice where the testimony of the unavailable witness "was at best corroborative on minor points").

Delacruz's second contention, that the delay has given cooperators extra time to fabricate their stories, is similarly speculative. (See, e.g., Dkt. No. 167 at 36 ("They, of course, *may* also know that DELACRUZ has cooperated in the past and they *may* have some personal animus towards DELACRUZ.") (emphases added).) It fails for that reason. See Long, 607 F. Supp. at 657 (declining to find due process violation where perceived prejudice was "based on conjecture").[5]

---

[5] Delacruz offers two additional examples of prejudice for the first time in his reply memorandum: his difficulties in procuring his own hospital records, and those of David Mojica ("Mojica"). The Court is not persuaded that either example amounts to "substantial prejudice." Delacruz does not claim that the delay caused the records to be lost or destroyed: he admits that the primary reason he cannot obtain Mojica's records is that he "need[s] more information," including a Social Security Number or date of birth. (Dkt. No. 174 at 10.) It is unclear how the preindictment delay is responsible for this lack of information. In addition, Delacruz only speculates that his own

B. DELACRUZ HAS NOT DEMONSTRATED THAT THE DELAY WAS AN INTENTIONAL DEVICE BY THE GOVERNMENT TO GAIN A TACTICAL ADVANTAGE

The Court is mindful that a sixteen-year preindictment delay is somewhat unusual and is careful to note that it need not rest its decision solely on whether or not the prejudices alleged by Delacruz are "substantial" or fall some degree short: even if the Court were to find that any of the grounds stated above constitute substantial prejudice, Delacruz's motion to dismiss would nevertheless fail for the independent reason that he has not made any showing that the preindictment delay was an intentional device designed by the Government to gain a tactical advantage. See Cornielle, 171 F.3d at 752 ("A defendant bears the 'heavy burden' of proving both that he suffered actual prejudice because of the alleged pre-indictment delay and that such a delay was a course intentionally pursued by the government for an improper purpose.")

Delacruz's arguments barely mention this requirement and make no attempt to satisfy it. At most, he argues that the Government's lengthy investigation -- and his own involvement in that investigation -- establishes that it could have indicted him at an earlier date. (See, e.g.,

---

records "may be difficult to find due to their age." (Id. (emphasis added)) As noted above, such speculation does not rise to the level of "substantial prejudice."

Dkt. No. 167 at 16 (noting that, in light of the Government's extensive interactions with Delacruz, "[i]t is therefore unjustified what caused a sixteen year delay to bring charges . . . if such charges were warranted long before that.").)[6] This theory does not meet the Lovasco standard. The Supreme Court explicitly distinguished investigative delay from delay undertaken by the Government solely to obtain a tactical advantage, and held that "to prosecute a defendant following investigative delay does not deprive [a defendant] of due process, even if his defense might have been somewhat prejudiced by the lapse of time." Lovasco, 431 U.S. at 796. It may be true that the "lapse of time" in this case is longer than most, but Delacruz's failure to allege that this delay was a result of improper motives is independently fatal to his due process claim. See, e.g., Long, 697 F. Supp. at 657 (denying due process claim where defendant failed to allege that the government sought to gain an unfair tactical advantage by delaying prosecution); Lawson, 683 F.2d at 694 (same).

---

[6] While Delacruz argues that the delay has allowed Government witnesses time they may have used to "concoct" a consistent story, he does not overtly argue that this circumstance was part of an intentional device by the Government to fill the trial record with fabricated testimony and thereby gain a tactical advantage. (See Dkt. No. 176 at 36-38; Dkt. No. 174 at 11-12.) To the extent that Delacruz seeks to raise this argument through suggestion or implication, the Court finds that it is unsupported.

## IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendant Vladimir Delacruz dismiss the S4 09 Cr. 341 indictment (Dkt. No. 166) is **DENIED**.

**SO ORDERED:**

Dated: New York, New York
6 September 2013

Victor Marrero
U.S.D.J.